Scobey *v.* Waters.

10L 551
12L 86
14L 351
14L 595

LINNA SCOBEY *v.* GEO. W. WATERS *et al.*

AND

MATILDA J. HARRIS *et al. v.* GEO. W. WATERS *et al.*

LIFE INSURANCE. *Assignment of policy.* A husband and father took out a policy of insurance on his life for $10,000, payable " to his wife and children, or their executors, administrators or assigns, \* \* \* and in case of the death of the said wife and children before his decease, then and in such case the amount of said insurance shall be paid to the legal heirs of the said assured for their use, or to their guardian, if under age, \* \* \* but should said assured die without issue surviving him, then to his legal representatives, or such person or persons as he may order and direct." After paying the cash part of four annual premiums, the assured, his wife and children, assigned the policy to third persons to indemnify them as sureties or endorsers for the assured. There were four children, three of them married women, and they and their husbands joined in the assignment, the privy examination of the wives being taken. The fourth child was an infant. The assured died after the assignees had made several an-

nual payments of premiums. leaving the wife and four children surviving. *Held:*

1. The assignees took nothing under the assignment of the husband.

2. They took the one-fifth share of the wife under her assignment.

3. They took the shares of the married daughters under the assignments of their husbands.

4. The assignment of the infant was void, but her one-fifth share of the fund would be charged with one-fith of the premiums paid by the assignees, with interest.

FROM WILSON.

Appeal from the Chancery Court at Lebanon. H. H. LURTON, Ch.

STOKES & SON for plaintiffs.

TARVER & GOLLADAY for defendants.

McFARLAND, J., delivered the opinion of the court.

On the 7th of January, 1870, James S. Harris, upon his own application, obtained a policy of insurance upon his life from the "Cotton States Life Insurance Company, of Macon, Georgia," in the sum of $10,000, payable as follows: "To his wife and children, or their executors, administrators or assigns, * * * and in case of the death of the said wife and children before the decease of the said James S. Harris, then under and in such case, the amount of said insurance shall be paid to the legal heirs of the said James S. Harris for their use, or to their guardian, if under age; * * * but should said James S. Harris die without issue surviving him, then to his legal

representatives or such person or persons as he may order and direct."

Said Harris paid the cash part of the first premium, and also the annual cash premiums falling due respectively January 7, 1871, 1872 and 1873. On the 31st of December, 1873, said Harris and his wife, M. J. Harris, and three of their four daughters joined in a written assignment of the policy to J. P. Harris and Geo. W. Waters. Two of the daughters, Linna Scobey and M. A. Roberts, were married women (the former being also an infant), and their husbands, U. M. Roberts and R. G. Scobey, joined in the assignment, and the said two daughters, as well as M. J. Harris, the wife of the assured, were privily examined touching their execution of the assignment. Fannie Harris, the other of the three daughters joining in this assignment, was an infant. A few days later, to-wit, January 10, 1874, the remaining daughter, Sallie Scobey, and her husband, James E. Scobey, executed a similar assignment, as to which said Sallie was also privily examined. The four daughters were the only children. The Insurance Company was promptly notified of the assignment. The assignment, upon its face, purports to have been for a valuable consideration; it was in fact made to secure the assignees and M. M. Roberts, as surety or endorser of said James S. Harris, and also debts which he owed to some of them; he being at the time in embarrassed and failing circumstances.

The assignees paid, or caused to be paid, the cash premiums of January, 1874, and 1875, and in Feb-

ruary, 1875, the assured died. Conflicting claims being set up, it was agreed by all parties to appoint an attorney to collect the amount due on the policy and deposit the same in bank, without prejudice to the claims of any of the parties, which was done. Soon afterwards three bills were filed, one by Linna Scobey, one of the daughters, by next friend. The other by the widow and the other three daughters. The allegations and prayer in each case are in substance the same. It is claimed that the assignments and transfer are void because the policy was not assignable in the manner and form, or for the purpose for which the assignment was made, and that complainants are entitled to the proceeds of the policy, to be settled, so far as the married daughters are concerned, to their sole and separate use.

The charge of fraud and undue influence is made in general terms in one of the bills, but it has not been insisted in argument that the charge has been sustained in either case. The complainant, Linna Scobey, charges that her husband is a man in moderate circumstances, and that this, together with her condition in life, make it proper to settle her share of the fund to her separate use. The other *femes covert* make no special allegations on the subject, but pray the same relief.

Several questions presented by the record have been very ably argued: First. In behalf of the defendants, it is maintained that all other questions aside the assignment of James S. Harris, the assured, was of itself sufficient to transfer the policy to the assignees

and give them the proceeds, especially as the subsequent premiums were part of them. The policy, as we have seen, was payable to the wife and children if they survived the assured, otherwise, to the personal representatives of the assured, or whoever he might appoint. We have held that the husband cannot assign a policy taken out by himself and in terms made payable to his wife and children, though it is otherwise if the policy be payable to the assured himself or his personal representative: *Gosling* v. *Caldwell*, 1 Lea, 454. An ingenious argument has been presented against this conclusion, but the decision is sustained both upon principle and authority. It rests, says Judge Cooper, upon the principle that rights are vested when the policy is issued, and cannot be divested without the consent of those for whose use the policy by its terms is payable. See in addition to the authorities referred to by Judge Cooper, in his opinion, the work of Hine & Nichol on the Law of Assignments of Life Insurance, chapter 8.

The assignee of the assured would acquire the right to the policy if the contingency should happen upon which it became payable to him, or his personal representative, that is to say, in the event he survived his wife and children. But this contingency not having happened, the assignees, so far as they claim under the assignment of the assured, acquired nothing.

The claim of the assignees must, therefore, depend upon the effect of the assignment of the wife and children.

It is argued, on behalf of the complainants, that the contingent interest in the policy which they owned at the time, could not be transferred in any mode known to the law.

The courts of New York have held, upon a construction of their statutes, that where a policy is taken out under the statutes of that State, allowing insurance on the life of the husband for the benefit of the wife and children, and the policy is in terms for their benefit, or assigned for their use, that it is not assignable *by the wife,* unless it be for the purpose of keeping the policy alive. But the current of authority elsewhere is otherwise. See the book before referred to, chapter 9.

It will be observed that the policy in this case is not payable to the wife *alone,* but to the wife and children; the assignment of the wife therefore, would if valid, only transfer her own interest, so that in considering her power to assign the policy, we consider only whether she may assign her own interest. The right or power of the children to assign their respective interests might stand upon different grounds. If they be *sui juris,* no reason can be perceived why they may not assign their interest, however it may be where they are under disability.

But it is earnestly argued that the assignment is void as to all the parties in the present case, under well settled rules in this State in regard to the estates and rights of *femes covert* and infants.

As to the complainant, Fannie Harris, who was at the time an infant and unmarried, there seems to

be little room for controversy. An assignment by her being necessary to transfer her interest, it only remains to determine whether the assignment by an infant of an interest of this character without consideration is valid.

The rule is that "when the court can pronounce the contract to be to the infant's prejudice, it is void—when to his benefit as for necessaries, it is good—when of uncertain nature it is voidable only at the election of the infant on attaining his majority": *Swafford* v. *Ferguson,* 3 Lea, 292; *Wheaton* v. *East,* 5 Yer., 41.

The assignment was not for the purpose of keeping the policy alive for the benefit of the infant, on the contrary it was absolute, and in no event was the infant to receive any benefit from it; and being at any rate *of some value,* and entirely without consideration, it was necessarily to the infant's prejudice, and under the above rule void. In granting this relief, however, to the infant complainant, it must be upon requiring her to do equity in respect to the premiums paid by the assignees, as to which hereafter.

The assignment by the wife of the assured and by his children, who were *femes covert* and their husbands, it is argued is void upon two grounds established by the decisions of this court. First, upon the ground that the interest of the wife and children, under the policy, was in the nature of a contingent and reversionary interest, depending upon their surviving the assured, and it is maintained that an interest of this character belonging to a married woman, cannot be

assigned by the husband, even though the wife join, for this would be to defeat her right of survivorship, and her right to an equitable settlement. The cases referred to are *Caplinger* v. *Sullivan,* 2 Hum., 549; *Smith* v. *Greer,* 3 Hum., 125; *Goodwin* v. *Moore,* 4 Hum., 221; *Bugg* v. *Frankland,* 4 Sneed, 141, and *McCaleb* v. *Critchfield,* 5 Heis., 288.

These authorities are to this effect, if the husband assign the reversionary interest or chose in action of the wife, *even though she join,* yet if the husband die leaving the wife surviving, before the assignee has reduced the chose to possession, *and while the right is yet reversionary,* she will take it by the right of survivorship. It is otherwise if the assignee has reduced the property to possession, or the contingency has happened upon which the right becomes absolute before the death of the husband. The assignee of the husband takes subject to the wife's right of survivorship in the contingency named.

But conceding for the argument that the interest of the wife and children under the policy is a reversionary or contingent interest, of the character indicated, yet the rule has no application to the married daughters in this case, as no such contingency has happened—their husbands are still living and no right of survivorship has accrued. The rule does not apply to the wife of the assured, for the reason that her husband had in no aspect the right to assign her interest, the assignee claiming under her assignment alone. Her rights stand upon different grounds.

The right of the complainants is again placed upon

Scobey *v.* Waters.

the doctrine well recognized in this State in the cases of *Smith* v. *Greer,* 3 Hum. 118; *Coppedge* v. *Threadjill,* 3 Sneed, 577; *Wilkes* v. *Fitzgerald,* 1 Hum., 54; *Dearin* v. *Fitzpatrick,* Meigs, 551; *Scott* v. *Hix,* 2 Sneed, 192. That is to say, upon the equitable right of a married woman to a provision out of her own property or fortune before the husband or his assignee has reduced it to possession.

The settled rule by these cases is, that a court of chancery having jurisdiction will not order the estate paid to the husband or his assignee without making a suitable provision for the wife, unless she being of full age, waive the right, and to this end she must be examined before the court or before a commissioner specially appointed for the purpose. A deed of assignment executed by husband and wife and acknowledged in the form prescribed for deeds of *femes covert,* will be ineffectual as against her right. This is without reference to the wife's right of survivorship or the reversionary character of the estate, nor is it material who invokes the aid of the court. The wife may enjoin the husband or his assignee from reducing the property to possession until a provision for her is made, but she is too late after the estate has been actually reduced to possession: *Dearin* v. *Fitzpatrick,* Meigs, 551.

The question is, first, whether this doctrine applies to the interest of a married woman in a policy of insurance similar to the interest of the married daughters in this case, where the assignee would not need the aid of a court of chancery to reduce the proceeds

of the policy to possession? The general rule is that a husband may reduce an ordinary chose in action of his wife to possession, and in the exercise of this right he will not be disturbed, as for instance, an ordinary note or obligation for money payable to the wife, and if he assign the chose the assignee will acquire the same right, subject in the cases above indicated to the wife's right of survivorship. The cases above referred to in which the doctrine contended for has been applied, were cases of legacies or distributive portions by will or inheritance, which it has been said form an exception to the general rule, that the husband may reduce the wife's estate to possession without interference, if he can do so at law without the aid of a court of chancery. As to such legacies or distributive portions, the husband may be enjoined until in a proper case, the wife is provided for. See Judge Nicholson's argument in *Dearin* v. *Fitzpatrick*, Meigs, 551, and note, in Judge Cooper's edition.

The question is whether a provision made by a father for his married daughter by a policy of insurance upon his own life, will stand in respect to the doctrine above referred to, upon the footing of a legacy or distributive portion as to which the wife's right to a provision will be protected against the husband or his assignee, or will it stand upon the footing of an ordinary legal chose in action, as to which the right of the husband to reduce to possession is absolute? Upon the one hand it may be said that a policy of insurance is analogous to a promissory note or any other chose in action payable in money

Scobey *v.* Waters.

to the wife, differing only as to the time and conditions upon which it is payable. On the other hand it may as justly be said that the provision made by a father for his children, by a policy of insurance on his own life, perhaps being unable to otherwise provide for them, is in lieu of and analogous to their father by will or inheritance, and the right of a married woman to have such provision secured to her, ought to stand upon as high ground as her legacy or portion by inheritance.

A life policy of insurance, both at common law and by force of the act of 1801, ch. 6, sec. 50 (Code, sec. 1967), is an assignable instrument or *chose in action: Mutual Prot. Ins. Co.* v. *Hamilton,* 5 Sneed, 269. The interest of the payee, or person to whom or for whose benefit the money is to be paid, is not reversionary, but a present interest although payable upon the death of the assured. There is no intermediate estate or interest necessary to constitute a reversion. And inasmuch as the husbands of the daughters have survived the assured, their assignments would have become operative as of a present right, even if the interest had previously been reversionary: *Bugg* v. *Franklin,* 4 Sneed, 130. The interest of the daughters in the money secured by the policy, and of course in the policy, is strictly analogous to an interest in a bond payable to them or for their benefit, or other chose in action made similarly payable, and the marital rights of the husband must rest on the footing of his rights in such instruments. It has never been held that chancery would, in the ordinary administra-

36—VOL. 10.

tion of the wife's equity, and when there is no in-
solvency, or special misconduct, or incapacity on the
part of the husband, sustain an original proceeding
by the wife for the enforcement of her equity, where
the property is not under the jurisdiction of the
court: 1 Lead. Cas. Eq., 674.

The assignment of M. J. Harris, the wife of the
assured, seems to stand upon a different ground from
the assignments by the married daughters, for the rea-
son that we have held the assignment of her *husband*
could not affect her rights. It is a settlement or
provision made for her by her husband, by the terms
of which he excludes himself from all control over
it. His rights being excluded, it is in the nature of
a separate estate of the wife. It being personal es-
tate and there being no restriction on the power of
disposition, either by the terms of the contract or by
positive law, why has she not the absolute power of
disposal as she does have over the income of her
separate *real* estate? Under our statutes she has the
absolute power of a *feme sole* over the *corpus* of her
separate real estate, by deed in a prescribed form,
where the power is not restricted in the deed of settle-
ment, and we have held that she may convey it for the
security of her husband's debts: *Mulloy* v. *Clapp*, 2 Lea,
586; *Lightfoot* v. *Bass*, 8 Lea, 350. It would be a
singular result if a *feme covert* be held to have the
absolute power of disposal over her separate *real* estate
even for her husband's benefit, and yet be without
power to dispose of her separate personal estate in the
same manner and for the same purpose, when there
is no positive limitation upon the power. We have

held, that independeut of the statute, in the absence of any limitation upon the power, the separate real estate of a *feme covert* may be conveyed by the joint deed of herself and husband: *Parker* v. *Parker*, 4 Lea, 392. No deed being required to pass title to personal estate, it would seem to follow that a *feme covert* has the absolute power to dispose of her separate personal estate by mere parol sale or transfer unless there be in the deed or instrument a positive limitation upon the power. It will be seen according to this, that the assignment of M. J. Harris' interest in the policy, depends alone upon *her act*, the act of her husband being for that purpose ineffectual, while the assignment of the interest of the married daughters is considered as the acts of their husbands. And this court has held that a married woman has the power to dispose of personal property held to her sole and separate use: *Jackson* v. *Rutledge*, 3 Lea, 628.

The result is that the assignees acquired the interest of each of the beneficiaries entitled under the policy except the infant daughter, whose assignment was void because of her infancy: One-fifth of the net fund would go to this daughter, subject however, to an equitable charge in favor of the assignees for one-fifth of the premiums paid by them, with interest. The residue of the fund will belong to the assignees. The cost of the entire litigation will be paid out of the fund before it is distributed.

The decrees of the court below will be reversed, and decrees entered here in accordance with this opinion. The costs of both suits, as before said, will be paid out of the fund.